551 So.2d 1223 (1989)
Sheldon POLAKOFF, Appellant,
v.
DEPARTMENT OF INSURANCE AND TREASURER, and Tom Gallagher, Insurance Commissioner, Appellees.
No. 89-737.
District Court of Appeal of Florida, First District.
September 8, 1989.
Rehearing Denied December 1, 1989.
*1224 Mark E. NeJame, of NeJame & Hyman, P.A., Orlando, for appellant.
Robert C. Byerts, Senior Atty., Dept. of Ins., Tallahassee, for appellees.
JOANOS, Judge.
This is an appeal from an emergency suspension order, suspending appellant's license to operate as a bail bondsman until final disposition of criminal charges filed against him. Appellant raises three issues directed to the constitutionality of section 648.45(1), Florida Statutes (1987): (1) whether section 648.45(1) violates substantive due process pursuant to the due process clause of the fourteenth amendment to the United States Constitution; (2) whether section 648.45(1) violates the equal protection clause of the fourteenth amendment to the United States Constitution, and article I, sections 2 and 9 of the Florida Constitution; and (3) whether section 648.45(1) violates article I, section 21 of the Florida Constitution by not allowing access to the courts for redress of an injury. We affirm.
Appellant has been licensed as a limited surety agent, i.e., bail bondsperson, under the provisions of Chapter 648, Florida Statutes, and has been in business as such in Orange County. On September 9, 1988, appellant was charged in a twelve-count information with racketeering, conspiracy to commit racketeering, loansharking, and illegal transportation of currency. On September 28, 1988, pursuant to sections 120.60(8), 648.45(1), and 648.50(1), Florida Statutes, the Insurance Commissioner issued an order temporarily suspending all licenses issued to appellant within the purview of the Department of Insurance. On November 14, 1988, appellant was charged in an information filed by the Statewide Prosecutor with additional felony counts, including racketeering, conspiracy to commit racketeering, grand theft, alteration of V.I.N. number, dealing in stolen property, and insurance fraud. On March 7, 1989, the Insurance Commissioner issued an amended emergency suspension order temporarily suspending all licenses issued to appellant within the purview of the Department of Insurance, and an administrative complaint pursuant to section 120.60(8), Florida Statutes. Appellant's notice of appeal was filed March 14, 1989.
The challenged statutory provision, section 648.45(1), Florida Statutes (1987), provides:
The department shall immediately temporarily suspend any license issued under this chapter when the licensee has been charged with a felony or a crime involving moral turpitude or a crime punishable by imprisonment of 1 year or more under the law of any state, territory, or country. Such suspension shall continue if the licensee has been found guilty of, or has pleaded guilty or no contest to, the crime, whether or not a judgment or conviction has been entered, *1225 during a pending appeal. (emphasis supplied).
The principle is well settled that every presumption is to be indulged in favor of the validity of a statute. Golden v. McCarty, 337 So.2d 388, 389 (Fla. 1976); Holley v. Adams, 238 So.2d 401, 404 (Fla. 1970). This presumption of constitutionality imposes a heavy burden of proof upon one attacking the validity of a statute, and such "act will not be declared unconstitutional unless it is determined to be invalid beyond a reasonable doubt." Department of Business Regulation, Division of Land Sales v. Smith, 471 So.2d 138, 143 (Fla. 1st DCA 1985), quoting Bonvento v. Board of Public Instruction of Palm Beach County, 194 So.2d 605 (Fla. 1967).
It is equally well settled that while the right to engage in a lawful business or occupation enjoys constitutional protection, such right may be limited when justified by the benefit to the public. "The right to earn a livelihood by engaging in a lawful occupation or business is subject to the police power of the state to enact laws which advance the public health, safety, morals or general welfare." Fraternal Order of Police v. Department of State, 392 So.2d 1296 (Fla. 1980). See also Golden v. McCarty, 337 So.2d 388, 390 (Fla. 1976). In other words, the constitutional right to pursue a lawful business or occupation is not a fundamental right which is subject to a strict scrutiny analysis under the equal protection clause. Fraternal Order of Police v. Department of State, 392 So.2d at 1302; United Yacht Brokers, Inc. v. Gillespie, 377 So.2d 668 (Fla. 1979). Rather, such pursuit is a privilege and not a property right. Woodham v. Williams, 207 So.2d 320 (Fla. 1st DCA 1968).
The test for determining whether a statute violates the due process clause "is whether the statute bears a reasonable relation to a permissible state legislative objective and is not discriminatory, arbitrary or oppressive." Lasky v. State Farm Insurance Co., 296 So.2d 9, 15 (Fla. 1974). See also Fraternal Order of Police, 392 So.2d at 1302; United Yacht Brokers, Inc. v. Gillespie, 377 So.2d at 670. Due process protects against legislative deprivation of life, liberty, or property, while equal protection is concerned with legislative classifications. Where no fundamental rights are involved, the test is essentially the same for both equal protection and substantive due process analysis. United Yacht Brokers, 377 So.2d at 671; State v. Walker, 444 So.2d 1137, 1138 (Fla.2d DCA), affirmed, 461 So.2d 108 (Fla. 1984). In such circumstances, the treatment accorded a particular class can be sustained by "a showing that the law is rationally and reasonably related to some legitimate legislative purpose and is not arbitrarily or capriciously imposed." United Yacht Brokers, Inc., 377 So.2d at 670. In sum, the basic principle of substantive due process is the protection of the individual from an abusive exercise of governmental powers. Walker, 444 So.2d at 1139.
Courts may not overturn a statute on due process grounds unless "it is clear that it is not in any way designed to promote the people's health, safety, or welfare, or that the statute has no reasonable relationship to its avowed purpose." Department of Insurance v. Dade County Consumer Advocate's Office, 492 So.2d 1032, 1034 (Fla. 1986). Moreover, courts will not examine the wisdom of the means chosen by the legislature to achieve the desired goal. "The fact that the legislature may not have chosen the best possible means to eradicate the evils perceived is of no consequence to the courts provided that the means selected are not wholly unrelated to achievement of the legislative purpose." Fraternal Order of Police, 392 So.2d at 1302.
When a suspect class is not involved, the test for purposes of an equal protection analysis is basically the same as under a substantive due process analysis, i.e., whether the classification is non-arbitrary, and is rationally related to a legitimate state purpose. Vildibill v. Johnson, 492 So.2d 1047, 1050 (Fla. 1986); Department of Insurance v. Southeast Volusia Hospital, 438 So.2d 815, 821 (Fla. 1983); The Florida High School Activities Association, Inc. v. Thomas, 434 So.2d 306, 308 (Fla. 1983); Khoury v. Carvel Homes South, Inc., 403 So.2d 1043, 1045 (Fla. 1st *1226 DCA 1981), review denied, 412 So.2d 467 (Fla. 1982). "When the difference between those included in a class and those excluded from it bears a substantial relationship to the legislative purpose, the classification does not deny equal protection." Lasky v. State Farm, 296 So.2d at 18.
Clearly, the legislature has broad discretion in creating statutory classifications, Fraternal Order of Police, 392 So.2d at 1302; North Ridge General Hospital v. City of Oakland Park, 374 So.2d 461, 464 (Fla. 1979), appeal dismissed, 444 U.S. 1062, 100 S.Ct. 1001, 62 L.Ed.2d 744 (1980); Khoury, 403 So.2d at 1045, and the party challenging the classification bears the burden to show that there is no conceivable factual predicate which would reasonably support the classification under attack. In re Estate of Gainer, 466 So.2d 1055, 1059 (Fla. 1985); Florida High School Activities Association, 434 So.2d at 308. Moreover, if more than one interpretation is available, courts must adopt the interpretation upholding the statute's constitutionality. Vildibill, 492 So.2d at 1050; Department of Insurance v. Southeast Volusia Hospital District, 438 So.2d at 820.
In Golden v. McCarty, the legislature enacted a statute making it unlawful for anyone to tattoo the body of a human being, except persons licensed to practice medicine or dentistry. Golden, who had been a licensed tattoo artist for twenty-five years prior to the effective date of the statute, argued the statute constituted an unlawful exercise of the state's police power, in that it bore no reasonable relation to the public health, safety, welfare or morals, and violated his constitutional right to equal protection by creating an arbitrary classification of persons allowed to tattoo. The court found the subject sought to be regulated clearly bore a substantial relationship to the public health, and that due to the nature of tattooing, limiting its practice to persons licensed to practice medicine or dentistry was reasonable.
In Department of Business Regulation v. Smith, the statute under attack required that individual owners of time-share condominium units, unlike other individual owners of real estate, must be licensed. This court found that the sale of time-share units was significantly different from ordinary real estate sales practices, in that a single unit could be sold many times during the course of a year. Consequently, time-share sales were found to involve "substantial and unique public interest concerns" that may require sales persons to be licensed. (emphasis supplied). In the circumstances, the court found state regulation was not factually arbitrary, unreasonable, or oppressive. 471 So.2d at 143. We conclude that bail bondspersons, like time-share salespersons, are engaged in sensitive occupations which involve unique public interest concerns, justifying the special regulatory measures contemplated by section 648.45(1).
Similarly, in United Yacht Brokers, appellant contended the legislative requirement that yacht brokers obtain prior written authorization before acting on behalf of a principal, a requirement imposed on no other class of licensed brokers of regulated commodities in this state, impermissibly singled out yacht brokers for disparate treatment in violation of the equal protection clause. The court disagreed, noting that the United States Supreme Court and the Florida courts have recognized that the legislature is entitled to think that evils in the same field may be of different quality and require different remedies. 377 So.2d at 671, quoting Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). The same can be said of bail bondspersons.
Of the three Florida cases citing section 648.45(1), only one, Grantham v. Gunter, 498 So.2d 1328 (Fla. 4th DCA 1986), addresses the constitutionality of the statute. As appellant has noted, the due process analysis in Grantham is concerned with procedural rather than substantive due process. Consequently, only the second part of the court's discussion dealing with equal protection has particular relevance to this case. In Grantham, as in the instant case, the suspended licensee waived a subsequent hearing, and, as here, maintained that members of other professions *1227 are not subject to an immediate suspension which in effect puts them out of business. The court observed that "[w]hile it may be true that a bail bondsman's livelihood depends on his retaining his license, he does not obtain his license on the basis of his need for income, but because he fills certain other qualifications." 498 So.2d at 1333.
The Fourth District noted that the statute requiring temporary suspension permits a probable cause standard  that of a mere information  to be used to deprive a licensee of a significant interest. However, such deprivation is temporary, unless the licensee is convicted of a felony, and there is no requirement that a reasonable doubt standard should apply in administrative actions, including license revocations. The court further found that a person's right to be a bail bondsman is not so strong as society's interest in having as bail bondsmen persons not charged with serious crimes. 498 So.2d at 1334. In sum, the court found a discernible reasonable basis for the classification created by section 648.45(1), and affirmed the temporary suspension by emergency order. Because the tests applied under equal protection and substantive due process are essentially the same, we conclude that the Fourth District's determination, on equal protection grounds, that section 648.45(1) bears a reasonable relationship to a legitimate state purpose, warrants a similar result with regard to the substantive due process analysis in this case.
Under the provisions of the Administrative Procedures Act, a party is afforded his "day in court" when he has the right to a hearing, and the right of an appeal to a judicial tribunal of the action of an administrative body. Scholastic Systems, Inc. v. LeLoup, 307 So.2d 166, 169 (Fla. 1974). See also Grantham, 498 So.2d at 1330-1331. Appellant concedes, as indeed he must, that the statute on its face does not deny him access to the courts. Instead, appellant asserts that he is denied meaningful access, due to the mandatory provisions of section 648.45(1), which permit of no exercise of discretion with regard to a temporary emergency suspension of the license of a bail bondsperson charged with a felony. The instant appeal illustrates the fallacy of this contention.
In summary, although appellant has advanced a challenge to the constitutionality of section 648.45(1), a review of the relevant case law reveals, among other things, that the result which obtains when a bail bondsman is charged with a felony is no more egregious to the bail bondsman than the loss of a business license to a tattoo artist, due to a change in licensing requirements. Moreover, we agree with the Fourth District that there is a discernible rational relationship between the legislative objective to protect the public from unscrupulous bail bondspersons and the means designed to obtain that objective. Bail bondspersons are authorized to effect arrests, to revoke the liberty of their clients, and to carry weapons. Members of other licensed professions and occupations do not exercise such power over the liberty of persons who make use of their services. In the circumstances, appellant's argument that bail bondspersons receive more onerous treatment than law enforcement officers is inapt. While a law enforcement officer charged with a felony is suspended by the department during the pendency of the charges, there is no similar entity to suspend an independent bail bondsperson. Rather, the legislature has placed this supervisory responsibility on the Insurance Commissioner.
Accordingly, we find that section 648.45(1) does not violate either the substantive due process or equal protection guarantees of the federal or state constitutions, nor does it bar access to the courts. Therefore, the emergency temporary suspension order imposed by the Insurance Commissioner is affirmed.
BOOTH and MINER, JJ., concur.